The plaintiff, Louie Allred, Jr., appeals from a summary judgment in favor of the defendant, Sheridan W. Shirley, M.D., sued both as a professional association and as an individual.
Since filing this appeal, Allred has filed a number of motions with this Court and has petitioned for a writ of mandamus to the trial court. As a preliminary matter, we note that the petition for the writ of mandamus is due to be denied. Some of the matters raised in the petition are moot; the remaining issues raised may be dealt *Page 1348 
with on appeal. Mandamus is an extraordinary remedy, and it is not proper where the petitioner has some other adequate remedy.Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala. 1990). Here, the petitioner not only has, but has utilized, an adequate remedy, appeal.
Allred has moved this Court to appoint a judge from outside the Tenth Judicial Circuit to hear his case. This motion will be rendered moot by our decision.
Allred has also made post-appeal motions relating to depositions; specifically, Allred argues that certain trial court depositions cannot be considered by this Court on review and that this Court should not consider any references to the content of the depositions as stated in filings of the defendant contained in the record or in the defendant's brief. We agree, but for reasons different from those argued by Allred.
None of the depositions taken in this case is before us and we cannot consider what the parties allege was contained in the depositions. Sheetz, Aiken Aiken, Inc. v. Louverdrape, Inc.,514 So.2d 797, 810 (Ala. 1987). In addition, we do not consider as evidence relating to the arguments and allegations herein, unsworn documents that were merely attached to filings in the trial court and that are now found in the record.
Also, the only relevant evidence in the record is in the form of an affidavit executed by Allred. Because there is no evidence before us of contrary facts, we cannot conclude, as Allred argues, that there was any genuine issue of material fact in the trial court. Thus, we now turn to whether, under a proper application of the law to the facts before us, the summary judgment was proper.[1]
Allred argues that the trial court erred in concluding that he stated a cause of action for medical malpractice and thus, he says, the court applied the wrong law to the facts of this case. Allred says that he has no claims against Dr. Shirley for breaching any standard of care; he says that the Alabama Medical Liability Act, which provides a standard of care to be utilized in malpractice actions, does not apply to this case because, he says, this is not a malpractice case.
Allred alleges that Dr. Shirley had treated him for an ongoing medical problem by the surgical removal and replacement of an implanted penile prosthesis. Allred averred in his complaint that this replacement prosthesis malfunctioned, and that there resulted a series of corrective surgeries and additional malfunctions, and eventually, a second surgical replacement of the prosthesis. Allred further averred that Dr. Shirley promised him that he would not be responsible for some of the costs associated with the corrective measures, but that, in fact, he was charged for those costs. Allred demanded damages for "lost wages," severe physical and emotional pain," and "emotional distress," based on "outrageous . . . conduct," "conversion," and "breach of contract."
In his affidavit Allred indicates that on four occasions Dr. Shirley advised that he have surgery to replace prostheses. He says that he had four surgeries for this purpose but later learned that on two of these occasions Dr. Shirley had not, in fact, replaced a prosthesis. Allred said that Dr. Shirley told him that he had replaced the prostheses on the two occasions when, Allred alleges, he had not.
The "standard of care" as defined in the Alabama Medical Liability Act applies to medical malpractice actions, whether they relate to intentional or to unintentional conduct and whether they are based on tort or on contract theories. See Ala. Code 1975, § 6-5-542(2).
In Benefield v. F. Hood Craddock Clinic, 456 So.2d 52 (Ala. 1984), we stated that it is the substance of the action, not the form of the action, that determines whether it is a medical malpractice action and whether it is, therefore, controlled by the provisions of the Alabama Medical Liability Act. Id. at *Page 1349 
54. That case involved allegations of misrepresentation by a doctor to a patient regarding the patient's medical condition. The plaintiff patient argued that she made no claim based on malpractice because she did not allege that her injury arose from the underlying medical care. We disagreed, stating that "[t]he fraudulent misrepresentations [the plaintiff] alleges her doctors made occurred, if at all, during the course of her treatment by her physicians" and that "[t]hey were inextricably a part of the post-operative doctor-patient consultations."Id.; see, Horn v. Citizens Hospital, 425 So.2d 1065 (Ala. 1982); Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972).
Applying these considerations to this case, we must agree with the trial court that Allred stated a claim of medical malpractice. It is undisputed that Dr. Shirley was Allred's treating physician, engaged in invasive medical procedures and post-operative care and consultations in regard to the events Allred complains of. Allred complains, in substance, about statements made about his treatment during the course of treatment, i.e., that prostheses were replaced that he says were in fact not replaced; he complains, in substance, that asa result of the failure of his treatment he was caused to incur additional expenses, which he says should have been borne by the defendant because the treatment was inadequate; he says, in substance, that Dr. Shirley admitted this fact and agreed that additional surgery was advisable and would be done free of charge because the first replacement surgery had been unsuccessful; he says that this is really a case about a malfunctioning consumer product, the prosthesis. But irrespective of whether a "consumer product" functioned improperly, so as to allow his medical problem to continue, the crux of his complaint is about the medical problem. Stated differently, Allred's problem was that a part of his body was still malfunctioning after medical treatment (involving,arguendo, a "consumer product" to correct the problem). The injuries he alleges flow from the failure of treatment and from discussions about his treatment; the foundation of his claim is that the treatment did not correct a medical problem, and all else flowed from this fundamental complaint.
Allred cites Skelton v. Druid City Hospital Board,459 So.2d 818 (Ala. 1984), a case where, during surgery, a suturing needle broke and a portion of it was caused to remain in the plaintiff's body. The plaintiff sued the hospital, in pertinent part, under a theory of breach of implied warranty as to the needle, and the trial court entered a summary judgment for the defendant on that claim. In the trial court, the hospital had successfully argued, in part, that it was not a "merchant" or a "seller" of goods and, therefore, that the plaintiff could not prevail on a warranty claim. We disagreed, holding that the hospital could be liable for breach of warranty. Allred asserts that his complaint stated a similar cause of action "in the commercial aspect of the relationship between the [parties]."
Allred averred in his complaint that the first prosthesis implanted by Dr. Shirley did not "pass the test of merchantability," but he went on to state that he entered an agreement with Dr. Shirley for Dr. Shirley to replace the prosthesis, "thereby establishing the contract made a basis for this action." All of Allred's allegations of wrongdoing and all of his requests for monetary damages stated in his complaint relate to matters that occurred, not from a breach of warranty, but from matters arising after he had waived any warranty claim. In his affidavit Allred stated that the first replacement prosthesis "failed within warranty" but that he "gave up [his] warranty claim, as consideration for the goods and services [he] was offered" (consisting, he indicates elsewhere, of Dr. Shirley's promise of another replacement prosthesis without charge because Dr. Shirley's treatment hadnot been adequate to correct his medical problem). He alleges, in substance, that Dr. Shirley, having conceded the inadequacy of the treatment, did not live up to this bargain.
Clearly, Allred did not make a breach of warranty claim, as had the plaintiffs in Skelton. Moreover, given all of the foregoing, *Page 1350 
it is evident that Allred made, in substance, a medical malpractice claim.
Having concluded that Allred made a medical malpractice claim, we now turn to the question whether he produced legally sufficient evidence on this claim. We note that there is no evidence from a medical expert to substantiate the claim that Dr. Shirley breached a standard of care owed to Allred, such evidence being required for Allred to carry the burden of proof in a medical malpractice case. Tuscaloosa Orthopedic ApplianceCo. v. Wyatt, 460 So.2d 156, 161 (Ala. 1984). However, there are situations that present an exception to this general rule, see Holt v. Godsil, 447 So.2d 191 (Ala. 1984), and Allred says that even if he had made a claim of medical malpractice, which he disputes, such an exception is applicable here. He says, correctly, that where the breach of the standard of care is so apparent that a layman could understand it from common knowledge or experience, expert testimony is not required.Tuscaloosa Orthopedic Appliance, 460 So.2d at 161. However, this case involves none of the situations we have recognized as falling within this exception. In Holt we enumerated those situations:
 "1) where a foreign instrumentality is found in the plaintiff's body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct."
447 So.2d at 192-93 (citations omitted).
Allred's allegations present none of the foregoing situations, and we conclude that the exception cited by Allred does not apply.
However, Allred argues that the Alabama Medical Liability Act, Ala. Code 1975, § 6-5-480 et seq., is unconstitutional.
The record indicates that Allred did not raise any issue of the constitutionality of the Act prior to the court's entry of the judgment. Therefore, we cannot consider such an issue on appeal. Home Indem. Co. v. Anders, 459 So.2d 836, 840 (Ala. 1984); Smith v. State, 280 Ala. 241, 192 So.2d 443 (1966).[2]
Allred also cites several purported trial court errors that occurred, he says, with respect to communications with the court, and that he says wrongfully influenced the disposition of this case. There is before us no transcript relating to these communications and no documents that would otherwise substantiate Allred's claims. In the absence of facts or testimony in the record to form the basis of an alleged error, we cannot reverse. Garrison v. Byrd, 276 Ala. 298,161 So.2d 500 (1964).
Similarly, as to the remaining pertinent issues raised by Allred, we do not have before us a sufficient record for review.
MOTIONS DENIED; WRIT DENIED; AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS and KENNEDY, JJ., concur.
[1] Allred complains that the trial court erred in not permitting him to alter the record on appeal by a "statement in lieu of transcript." There is no indication in the record that the requisites of Ala.R.App.P. 10(d) were met by Allred so as to permit the inclusion of such a statement.
[2] Allred has also requested permission to file an additional brief to further elaborate on this argument. This request is rendered moot under the foregoing analysis.