PER CURIAM.
 

 Alpha Cobb appeals from a summary judgment in favor of Edward H. Fisher III, M.D. (“Dr. Fisher”), Edward H. Fisher III, M.D., P.C. (hereinafter referred to collectively as “Fisher”), and Russellville Hospital, LLC (“the hospital”). We affirm.
 

 Cobb sued Fisher and the hospital on August 16, 2006, stating claims alleging medical malpractice, breach of fiduciary duty, and the tort of outrage and asserting claims based on the doctrines of res ipsa loquitor and respondeat superior. She alleged that Dr. Fisher had performed a bilateral knee replacement on her at the hospital on August 16, 2004. Cobb asserted that she experienced pain in her left knee and had difficulty walking after the surgery, and that in December 2004 she discovered bone fragments and cement in her left knee. Cobb maintained that her pain was alleviated by subsequent surgery that removed the bone fragments and some of the cement.
 

 Fisher and the hospital answered Cobb’s complaint. On February 22, 2007, the trial court entered an order placing the ease on that court’s “administrative docket” and stating that the parties could move to have the case returned to the “active docket” when the case was ready for trial. Five weeks later, on April 2, 2007, the trial court entered a scheduling order. The scheduling order stated, in part, as follows:
 

 “(1) Plaintiffs to provide appropriate Rule 26[, Ala. R. Civ. P.,] information on or before May 15, 2007;
 

 “(2) Plaintiffs will make their experts available for deposition on or before June 15, 2007;
 

 “(3) Defendants will identify their expert witnesses and provide appropriate Rule 26 information on or before August 1, 2007;
 

 “(4) The Defendants will present their experts for deposition on or before September 15, 2007;
 

 
 *1255
 
 “(5) Discovery will close on November 1, 2007;
 

 “(6) All dispositive motions shall be filed on or before December 1, 2007
 

 [[Image here]]
 

 The parties thereafter proceeded with discovery and issued subpoenas to third parties. On May 16, 2007, the hospital filed a motion to compel discovery responses from Cobb, and the following week the trial court ordered Cobb to respond to the hospital’s outstanding discovery requests. However, neither Cobb nor Fisher and the hospital disclosed information regarding their expert witnesses, and no expert witnesses were deposed. On November 9, 2007, the hospital moved for a summary judgment. To support its motion, the hospital submitted the affidavit of Leah Hyde, a nurse who had participated in Cobb’s surgery. Hyde stated that she was familiar with the standard of care applicable to nurses at the time of Cobb’s surgery, that the hospital’s nursing staff adhered to that standard, and that the standard was not breached. She also stated that cement is used during knee-replacement surgery to hold the new joint in place.
 

 Based on Hyde’s affidavit, the hospital argued that it had not breached the applicable standard of care and that the burden therefore had shifted to Cobb to present substantial evidence to support her claims. The hospital argued that Cobb had not done so. Specifically, the hospital asserted that Cobb had not presented expert testimony to support her claims as required under § 6-5-548, Ala.Code 1975, a part of the Alabama Medical Liability Act, § 6-5-540 et seq., Ala.Code 1975 (“the AMLA”).
 

 On November 13, 2007, Fisher moved for a summary judgment, asserting substantially the same arguments stated in the hospital’s summary-judgment motion. Fisher’s motion was supported by an affidavit of Dr. Fisher. Dr. Fisher stated that he was familiar with the standards of care applicable to similarly situated healthcare providers and to nurses at the time of Cobb’s surgery. Dr. Fisher stated that neither he nor the hospital’s nursing staff had breached those standards of care. Dr. Fisher also stated that cement is used during a knee-replacement procedure and that it remains inside the patient to hold the new joint in place.
 

 The trial court set the summary-judgment motions for a hearing on January 3, 2008. Three days before the hearing, on December 31, 2007, Cobb responded to the summary-judgment motions. She based her response almost exclusively on the affidavit of Steven R. Graboff, M.D., a licensed orthopedic surgeon who practices in California. Dr. Graboff stated that he was familiar with the standard of care applicable to similarly situated health-care providers in the same general line of practice as Dr. Fisher in the national medical community. Dr. Graboff stated that he had reviewed Cobb’s medical records, and, based on the information in those records, it was his opinion that Dr. Fisher and the hospital staff had deviated from the applicable standards of care.
 

 On the day of the hearing on the summary-judgment motions, Fisher and the hospital moved to strike Dr. Graboff s affidavit. They stated that Cobb did not disclose Dr. Graboff as an expert witness by May 15, 2007, pursuant to the April 2, 2007, scheduling order. They argued, therefore, that Dr. Graboff s affidavit was untimely and was thus, due to be stricken. They also argued that Dr. Graboff s affidavit did not adequately describe the applicable standards of care and that, as to the
 
 *1256
 
 hospital, Dr. Graboff was not a similarly situated health-care provider.
 

 Before the trial court ruled on the motion to strike and the summary-judgment motions, Cobb filed a supplemental response to the summary-judgment motions. She argued, among other things, that her claims fell within an exception to the requirement in the AMLA for expert testimony because, she said, the claims involved a foreign substance or instrumentality, i.e., the cement in her knee. Cobb also moved to be relieved from the April 2, 2007, scheduling order. In that motion, Cobb stated that, “because of staffing issues,” her counsel had not calendared the scheduling order. Cobb contended that her failure to comply with the scheduling order was an administrative oversight and that her attorney had not failed to “participate in good faith.” See Rule 16(f), Ala. R. Civ. P. She also filed a motion that refers to a prior oral motion in which she argued that affidavits submitted with Fisher’s and the hospital’s summary-judgment motions included expert opinions and that Fisher and the hospital had similarly failed to disclose them experts.
 

 On February 13, 2008, the trial court entered an order granting Fisher’s and the hospital’s motions to strike and for a summary judgment and dismissing Cobb’s action with prejudice. The trial court stated that its April 2, 2007, scheduling order required Cobb to designate an expert by May 15, 2007, and to make the expert available for deposition by June 15, 2007. The trial court stated that Cobb had failed to comply with that order, and it rejected her argument that Fisher and the hospital would not be prejudiced by the entry of a new scheduling order. It noted that Fisher and the hospital had filed their summary-judgment motions pursuant to the April 2, 2007, scheduling order and that Cobb had “the benefit of reviewing the motion[s] and seeing the arguments of the defendants before [she] selected [her] expert.” Finally, the trial court discussed the delay in discovery that would result from a new scheduling order and stated: “The Court would be more inclined to give leeway to [Cobb] if only a month or two had lapsed from the deadline of the scheduling order.”
 

 Cobb moved to alter, amend, or vacate the trial court’s judgment. Her motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., and she appealed. On appeal, Cobb contends that the trial court’s summary judgment amounted to a discovery sanction under Rule 16(f) and Rule 37(b), Ala. R. Civ. P., and that in entering the judgment the trial court had exceeded its discretion because, she says, the sanction is so severe as to not be proportional to her violation of the scheduling order. In the alternative, Cobb contends that her claims fall within an exception to the requirement in the AMLA for expert testimony. Fisher and the hospital contend that the trial court’s summary judgment was not a discovery sanction but was based on Cobb’s failure to present expert testimony to support her claims, and they argue that the judgment, therefore, should be affirmed. Alternatively, Fisher and the hospital contend that, if the judgment was in the nature of a discovery sanction, it was appropriate.
 

 Our standard of review of a summary judgment is well settled:
 

 “ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion.... ’
 
 McClendon v. Mountain Top Indoor Flea Market, Inc.,
 
 601 So.2d 957, 958 (Ala.1992).
 

 
 *1257
 
 “ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West
 
 v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala. 1989).’
 

 “Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,
 
 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo.
 
 Alabama Republican Party v. McGinley,
 
 893 So.2d 337, 342 (Ala. 2004).”
 

 Pritchett v. ICN Med. Alliance, Inc.,
 
 938 So.2d 933, 935 (Ala.2006). We note that “[t]he decision concerning the appropriate sanction for failure to comply with a pretrial order, including whether to exclude the testimony of the noncomplying witness, is within the trial court’s discretion,” and we review such decisions to determine whether the trial court exceeded its discretion.
 
 Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc.,
 
 901 So.2d 84, 105 (Ala.2004) (citing
 
 Truck Rentals of Alabama, Inc. v. M.O. Carroll-Newton Co.,
 
 623 So.2d 1106, 1112 (Ala.1993), and
 
 Mitchell v. Moore,
 
 406 So.2d 347, 350 (Ala.1981)).
 

 The AMLA, at § 6-5-548(a), Ala. Code 1975, provides, in relevant part:
 

 “In any action for injury ... against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.”
 

 This Court has stated: “[i]n a medical-malpractice action, the plaintiff ordinarily is required to present expert testimony as to the relevant standard of care.”
 
 Martin v. Dyas,
 
 896 So.2d 436, 441 (Ala.2004). “A plaintiff in a medical-malpractice action must also present expert testimony establishing a causal connection between the defendant’s act or omission constituting the alleged breach and the injury suffered by the plaintiff.”
 
 Sorrell v. King,
 
 946 So.2d 854, 862 (Ala.2006) (citing
 
 Pruitt v. Zeiger,
 
 590 So.2d 236, 238 (Ala.1991)).
 

 “However, ‘[a]n exception to this rule [requiring expert testimony] exists “in a case where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it.” ’
 
 [Tuscaloosa Orthopedic Appliance Co. v.] Wyatt,
 
 460 So.2d [156,] 161 [ (Ala. 1984) ] (quoting
 
 Dimoff v. Maitre,
 
 432 So.2d 1225, 1226-27 (Ala.1983)). This Court has recognized the following situations as falling within this exception:
 

 “ ‘ “1) where a foreign instrumentality is found in the plaintiffs body follow
 
 *1258
 
 ing surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor’s allegedly negligent conduct.” ’
 

 “Allred [v. Shirley],
 
 598 So.2d [1347,] 1350 [ (Ala.1992) ] (quoting
 
 Holt v. Godsil,
 
 447 So.2d 191, 192-93 (Ala.1984) (citations omitted in Allred)).”
 

 Anderson v. Alabama Reference Labs.,
 
 778 So.2d 806, 811 (Ala.2000); see also
 
 Sorrell v. King,
 
 946 So.2d at 861-62;
 
 Ex parte HealthSouth Corp.,
 
 851 So.2d 33, 37 (Ala. 2002).
 

 In her principal brief seeking reversal of the trial court’s summary judgment, Cobb makes two arguments. She contends that the circumstances surrounding the discovery of a foreign substance in her following the surgery — the cement— entitle her to an exception from the requirement of the AMLA that she submit expert testimony. See
 
 Anderson v. Alabama Reference Labs.,
 
 supra. She further contends that even if she was required to submit expert testimony, the trial court’s dismissal of her action constituted an excessive discovery sanction. She does not assert in her principal brief, as she did in the trial court, that Fisher and the hospital also violated the discovery deadline and therefore that the trial court did not deal evenhandedly with the failure of all parties to comply with its discovery order. She raises this argument on appeal for the first time in her reply brief. “[T]his Court does not address issues raised for the first time in a reply brief.”
 
 Byrd v. Lamar,
 
 846 So.2d 334, 341 (Ala.2002). Another argument, possibly related to the contention of lack of evenhandedness, is the extent to which expert testimony from the defendant is necessary to establish a suitable basis for the conclusion of unavailability of the “foreign instrumentality” exception to the AMLA requirement of expert testimony as to the standard of care. We address only the arguments for reversal presented in Cobb’s principal brief.
 

 Cobb contends that the cement found in her knee following the surgery was a foreign instramentality and that Dr. Fisher’s and the hospital staffs “want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it.”
 
 Anderson,
 
 778 So.2d at 811. However, it is undisputed that cement remains in a patient’s knee to hold the new joint in place after correctly performed knee-replacement surgery. Therefore, the cement in Cobb’s knee was not akin to an instrumentality that should have been removed by the surgeon but that was negligently left in the patient’s body. See, e.g.,
 
 Houserman v. Garrett,
 
 902 So.2d 670 (Ala.2004) (surgical pad left in patient’s body after surgery);
 
 Sellers v. Noah,
 
 209 Ala. 103, 95 So. 167 (1923) (needle left in patient’s body after surgery). Instead, the cement that remains in Cobb’s body is a part of the knee-replacement procedure. The question, therefore, is not whether Dr. Fisher and the hospital staff acted negligently in leaving the cement in Cobb’s knee; rather, the question is whether the placement or use of the cement breached the standard of care. Accordingly, the discovery of bone fragments and cement in Cobb’s knee four months after the surgery is not indicative of a breach of the standard of care “so appar
 
 *1259
 
 ent ... as to be understood by a layman.”
 
 Anderson,
 
 778 So.2d at 811. Therefore, Cobb’s claims do not fall -within the exception to the general rule requiring expert testimony in medical-malpractice actions. Accordingly, it was incumbent upon Cobb to present expert testimony to support her claims. See, e.g.,
 
 Martin,
 
 supra, and
 
 Sor-rell,
 
 supra. It is undisputed that the April 2, 2007, scheduling order, at the very least, required Cobb to present her expert for deposition on or before June 15, 2007. Cobb did not do so.
 

 Cobb also contends that the summary judgment entered for Fisher and the hospital was a discovery sanction for her failure to comply with the trial court’s scheduling order. As discussed above, the AMLA and this Court’s prior decisions require a plaintiff to present expert testimony to support his or her claims, and, absent the application of an exception, the failure of the plaintiff to do so is usually fatal to his or her claim. Accordingly, the striking of a plaintiffs expert testimony is, in effect, fatal to the action.
 

 The trial court was authorized, pursuant to Rules 16(f) and 37(b)(2)(C), Ala. R. Civ. P., to impose sanctions on a party for failure to comply with the April 2, 2007, scheduling order. Rule 16(f) provides, in relevant part:
 

 “If a party or party’s attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party’s attorney is substantially unprepared to participate in the conference, or if a party or party’s attorney fails to participate in good faith, the judge, upon motion or the judge’s own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), CD).”
 

 The orders provided for in Rule 37(b)(2), Ala. R. Civ. P., include:
 

 “(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
 

 “(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; [and]
 

 “(D) ... [A]n order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.”
 

 Fisher and the hospital argue that the trial court did not enter a summary judgment against Cobb as a sanction under Rule 16 for missing a mandatory discovery deadline. Instead, they argue that the trial court merely struck Cobb’s proffered expert’s affidavit as a means of enforcing its order specifying a deadline by which her expert, if there was to be one, must have been identified. We agree. This is not a situation where the plaintiff missed a deadline imposed by the court and is sanctioned for doing so with the entry of a summary judgment, such as where a party fails or refuses to meet a court-ordered deadline for responding to discovery requests by the other side. Here, in contrast, the deadline was for an optional disclosure: If Cobb was going to introduce expert testimony, then she was required to identify the expert by a certain date. Thus, Cobb’s failure to identify an expert by that date was not in and of itself a
 
 *1260
 
 sanctionable offense. Accordingly, it was not a direct ground for entering a summary judgment against her under Rule 16; i.e., it was not a “fail[ure] to obey” a scheduling or pretrial order as contemplated by Rule 16(f). Therefore, we conclude that in entering the summary judgment the trial court was not sanctioning Cobb for violating an order of the court.
 

 Cases dealing with the inappropriateness of dismissal as a sanction for violating an order unless the conduct is willful or contumacious are not on point. Here, Cobb would be entitled to relief from the trial court if she satisfied the requirements of Rule 6(b), Ala. R. Civ. P. Under that rule, enlarging the time in which an act is to be perform is allowed “where the failure to act was the result of excusable neglect.” Discovery was ongoing during the times in question in this action, even though the case had been placed on the trial court’s “administrative docket.” In fact, during the weeks leading to the discovery deadline, the parties exchanged correspondence regarding discovery responses and a motion to compel those responses. Under the circumstances, Cobb’s inattention to the requirements of the scheduling order from May 15, 2007, through as late as December 31, 2007, is difficult to characterize as excusable neglect.
 

 Under the circumstances described above and given the issues presented, we cannot say that the trial court exceeded its discretion in striking the affidavit of Cobb’s expert and entering a summary judgment for Fisher and the hospital.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
 

 SHAW, J., concurs in the result.